# 24-1678-cv

## In the
## United States Court of Appeals
### For the Second Circuit



HUDSON SHORE ASSOCIATES LIMITED PARTNERSHIP,
HAVEN ON THE HUDSON LLC, KENNETH LEVINSON and
HUDSON VALLEY PROPERTY OWNERS ASSOCIATION,

*Plaintiffs-Appellants,*

— v. —

STATE OF NEW YORK, NEW YORK STATE DVISION OF HOUSING
AND COMMUNITY RENEWAL, VILLAGE OF NYACK, NEW YORK
and CITY OF POUGHKEEPSIE, NEW YORK,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANT-APPELLEE
## CITY OF POUGHKEEPSIE, NEW YORK

REBECCA A. VALK
*Attorney for Defendant-Appellee*
*City of Poughkeepsie, New York*
62 Civic Center Plaza
Poughkeepsie, New York 12601
(845) 451-4065
rvalk@cityofpoughkeepsie.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT .............................................................. 1

STATEMENT OF JURISDICTION ......................................................... 1

ISSUES PRESENTED FOR REVIEW ..................................................... 2

STATEMENT OF THE CASE ................................................................ 2

    A. FACTUAL BACKGROUND ........................................................ 2

    B. PROCEDURAL BACKGROUND ................................................ 5

SUMMARY OF THE ARGUMENT ........................................................ 7

ARGUMENT: ....................................................................................... 8

POINT I:    ETPA §§ 8623[D] & [E] ARE FACIALLY VALID
AND DO NOT VIOLATE THE FOURTH AMENDMENT ......... 8

    A. PLAINTIFFS-APPELLANTS HAVE NO REASONABLE
EXPECTATION OF PRIVACY IN THE RECORDS THAT
MAY BE REQUESTED UNDER ETPA § 8623[D] ............... 8

    B. ETPA § 8623[E] DOES NOT PRECLUDE AN
OPPORTUNITY FOR REVIEW PRIOR TO THE
IMPOSITION OF ANY NOMINAL PENALTY FOR
NON-COMPLIANCE ................................................. 11

    C. ETPA §§ 8623[D] & [E] SATISFY THE STANDARD OF
REASONABLENESS REQUIRED TO SURVIVE
A FACIAL CONSTITUTIONAL CHALLENGE ................. 14

POINT II:  PLAINTIFFS-APPELLANTS HAVE NOT ALLEGED
AND CANNOT DEMONSTRATE THAT ETPA §§ 8623 [F]
VIOLATES THE FOURTH AMENDMENT ............................. 17

POINT III: ETPA §§ 8623[F] IS FACIALLY VALID AND DOES
NOT VIOLATE THE FOURTEENTH AMENDMENT .............. 20

CONCLUSION ................................................................................... 24

CERTIFICATE OF COMPLIANCE ..................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Serio*, 261 F.3d 143 (2d Cir. 2001) ...................................... 12, 21

*Arizona Hudson Valley LLC v. Allen*, No. 22-CV-1306, 2023 U.S. Dist. LEXIS 100447 (N.D.N.Y. June 9, 2023) ....................................................22

*Camara v. Municipal Court of San Francisco*, 387 U.S. 523 (1967) .....................14

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) ....................................... 7, 13, 15

*Clementine Co., LLC v. Adams*, 74 F.4th 77 (2d Cir. 2023) ...................................2

*Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540 (2d. Cir. 2023) ...........................................................................................................2

*Corlies Manor Realty, LLC, et. al. v. The City of Poughkeepsie*, et. al., Index No. 2024-53504 (Sup. Ct. Dutchess County) ...........................................22

*Donovan v. Dewey*, 452 U.S. 594 (1980) ...............................................................14

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568 (1988) .............................................................................................12

*Empire Healthchoice Assur., Inc. v. McVeigh*, 396 F.3d 136 (2d Cir. 2005) ...........12

*Field Day, LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006) ................. 13, 21

*Gem Fin. Serv. v. City of New York*, 298 F. Supp. 3d 464 (E.D.N.Y. 2018) ...........11

*Glenwood TV, Inc. v. Ratner*, 103 A.D.3d 322 (2d Dept. 1984) .............................10

*Harper v. Werfel*, 118 F.4th 100 (1st Cir. 2024) ...................................................10

*Hotop v. City of San Jose*, 982 F.3d 710 (9th Cir. 2020) .......................................10

*Kaur v. New York State Urb. Dev. Corp.*, 15 N.Y. 3d 235 (2010) ..........................22

*Lusk v. Vill. of Cold Spring*, 475 F.3d 480 (2d Cir. 2007) ....................................12

*MA LEG Partners 1 v. City of Dallas*, 442 F. Supp. 3d 958 (N.D. Texas 2020) .9, 10

*Manocherian v. Lennox Hill Hosp.*, 84 N.Y.2d 385 (1994) ......................................3

*Matter of Hudson Val. Prop. Owners Assn. Inc. v. City of Kingston N.Y.*, 227 A.D.3d 1 (3d Dept. 2024) ...............................................................................18

*Matter of Santiago-Monteverde*, 24 N.Y.3d 283 (2014) .........................................3

*New York v. Burger*, 482 U.S. 691 (1987) ..............................................................17

*Olsen v. Hamilton*, 330 F. Supp. 3d 545 (Maine Dist. Ct. 2018) ............................14

*Pusatere v. City of Albany*, 214 A.D.3d 91 (3d Dept. 2023) ...................................17

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) ..............................................10

*Smith v. Maryland*, 442 U.S. 735 (1979) ................................................................9

*Spring Valley Gardens Associates v. Marrero*, 100 A.D.2d 93 (2d Dept. 1984) aff'd 68 N.Y.2d 627 (1986) ................................................................................18

*United States v. Knotts*, 460 U.S. 276 (1983) ....................................................9
*United States v. Salerno*, 481 U.S. 739 (1987) ............................................7, 13
*Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995) ...............................14
*Whalen v. Roe*, 429 U.S. 589 (1977) ...............................................................10
*Wilson v. One Ten Duane St. Realty Co.*, 123 A.D.2d 198 (1st Dept. 1987) ............3

**Statutes**

28 U.S.C. § 1291 ...................................................................................................1
28 U.S.C. § 1331 ...................................................................................................1
42 U.S.C. § 1983 ...................................................................................................5
N.Y. L. 2019, ch. 36 .............................................................................................4
N.Y. Unconsol. Laws § 8621, et. seq. ..................................................................3
N.Y. Unconsol. Laws ch. 249-B, § 12-a .............................................................10
N.Y. Unconsol. Laws ch. 249-B, § 3(d) ..........................................................9, 15
N.Y. Unconsol. Laws ch. 249-B, § 3(e) ......................................................... 12, 15
N.Y. Unconsol. Laws ch. 249-B, § 3(f) .......................................................... 18, 20

**Constitutional Provisions**

U.S. Const. amend. IV ..........................................................................................8

## PRELIMINARY STATEMENT

Plaintiffs-appellants have elected to appeal the well-reasoned District Court decision(s) that thwarted their last-ditch effort to prevent municipalities from exercising their authority under New York State Law to temporarily use rent-regulation to address declared housing emergencies within their jurisdictions. The Amended Complaint was based on nothing more than spurious allegations of constitutional infirmities in the December 8, 2023 amendments to the Emergency Tenant Protection Act of 1974 ("ETPA") and, at least with respect to defendant-appellee City of Poughkeepsie, New York ("Poughkeepsie") was asserted against a municipality that, still to this day, has never even used the amendments being challenged. The District Court was right to dismiss the Amended Complaint, in its entirety, and this Court should uphold that decision.

## STATEMENT OF JURISDICTION

While defendant-appellee does not dispute the District Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and this Court's appellate jurisdiction pursuant to 28 U.S.C. § 1291, it does not waive its claim, which was never addressed by the District Court, that plaintiffs-appellants lack Article III standing with respect to defendant-appellee and continues to assert the same. Specifically, as was thoroughly demonstrated in the proceedings below, because Poughkeepsie did not use or rely on any of the statutory provisions being challenged by plaintiffs-

1

appellants in this proceeding, there is no alleged injury that can be traced to defendant-appellee Poughkeepsie and therefore no Article III standing with respect to defendant-appellee Poughkeepsie (A302-A408; A545-A553).

## ISSUES PRESENTED FOR REVIEW

1.    Whether this Court should affirm the District Court's dismissal of plaintiffs-appellants' First Cause of Action because §§ 8623(d) and (e) of the ETPA are facially constitutional and do not violate the Fourth Amendment's protection against unreasonable searches and seizures.[1]

2.    Whether this Court should affirm the District Court's dismissal of plaintiffs-appellants' Second Cause of Action because ETPA § 8623(f) is facially constitutional and satisfies the Fourteenth Amendment's due process requirements.

## STATEMENT OF THE CASE

**A.**    **FACTUAL BACKGROUND**

Regulation of the rental housing market has long been understood as a proper exercise of government power, with such regulations having been enacted at every level of government, and repeatedly upheld by state and federal courts alike, for over a century.  *See Cmty. Hous. Improvement Program v. City of New York*, 59

---

[1] To the extent plaintiffs-appellants seek appellate review regarding whether ETPA § 8623(f) violates the Fourth Amendment, such review is wholly inappropriate as plaintiffs-appellants' amended complaint does not contain any allegation that ETPA § 8623(f) violates the Fourth Amendment.  *See Clementine Co., LLC v. Adams*, 74 F.4th 77, 89 n. 3 (2d Cir. 2023).

F.4th 540, 544, 547 (2d. Cir. 2023). Beyond being proper, courts have recognized the crucial role that such regulations play in the lives of New York residents, and have deferred to legislative determinations that such regulations are necessary to preserve affordable housing for low-income, working poor and middle-class residents. *See Matter of Santiago-Monteverde*, 24 N.Y.3d 283, 289 (2014).

Yet not all rent regulations are created equal. Some, like rent control laws, place rigid and onerous requirements that significantly burden property owners' rights with respect to their properties. *See Manocherian v. Lennox Hill Hosp.*, 84 N.Y.2d 385, 389 (1994). Despite plaintiffs-appellants histrionics, other regulations, such as rent stabilization laws, are far more relaxed, specifically designed to ensure that the preservation of affordable housing does not unduly burden landlords' property interests. *See id.*

Relevant here is the Emergency Tenant Protection Act of 1974 ("ETPA"), N.Y. Unconsol. Laws § 8621, et. seq., which was enacted to "extend the protection of rent stabilization in the face of a declared emergency brought about by housing shortages and their attendant problems." *See Wilson v. One Ten Duane St. Realty Co.*, 123 A.D.2d 198, 201 (1st Dept. 1987). Initially, however, this critical protection was only extended to a handful of municipalities in and around New York City. It took another forty-five (45) years, with the passage of the Housing Stability and Tenant Protection Act of 2019 ("HSTPA"), for these protections to be

made available to municipalities across the State of New York, including defendant-appellee Poughkeepsie. *See* N.Y. L. 2019, ch. 36.

In October 2023, Poughkeepsie, through its contractor, Collective for Community, Culture and Environment ("CCCE"), began the process of conducting a vacancy study to determine whether there existed a housing emergency that could best be addressed by the protections made available under the ETPA. On November 4, 2023, introductory letters were sent by regular mail to all property owners covered by the ETPA. The initial survey and cover letter were sent by certified mail to those same property owners on November 6, 2023. A second survey and cover letter were sent to those property owners who had not yet responded or who had provided conflicting responses on November 20, 2023. All three of these mailings advised the recipient that, consistent with the best practices described by the prevailing case law at the time, non-responses would be deemed to have zero vacancies (A380 -A381).

Following these three mailings, and other efforts to obtain vacancy rate information from eligible properties, but prior to the completion of the study and issuance of a final report, on December 8, 2023, ETPA was amended to include four (4) new provisions: §§ 8623(d)-(g). As Poughkeepsie's study was well underway before the enactment of these provisions, it is inarguable that none of

4

these provisions were ever utilized, employed or relied upon as a part of its vacancy study.

Nevertheless, these amendments gave petitioners-appellants the opportunity they had been waiting for—a chance for one more try to have rent regulations declared unconstitutional. Despite the lengthy legal history of landlords trying and failing to achieve such an outcome, plaintiffs-appellants remained undeterred, bringing a wholly frivolous action against a municipality that never even used the provisions in question.

**B.    PROCEDURAL BACKGROUND**

Plaintiffs-appellants commenced this proceeding against defendants-appellees by filing a Complaint in the United States District Court for the Northern District of New York on March 18, 2024, which was quickly replaced by an Amended Complaint filed on March 25, 2024 (A9 – A175).

The Amended Complaint asserts three causes of action. The first cause of action seeks to have ETPA §§ 8623(d) and (e) declared void per the Fourth Amendment. The second cause of action, the only cause of action that includes any allegations regarding defendant-appellee Poughkeepsie, seeks to have ETPA § 8623(f) declared void per the Fourteenth Amendment. The third cause of action seeks monetary damages pursuant to 42 U.S.C. § 1983 as a result of records requests made pursuant to ETPA §§ 8623(d) and (e).

With respect to the second cause of action, plaintiffs-appellants put forth a truly bizarre argument that despite Poughkeepsie's reliance on the long-standing court-approved practice of presuming a zero-vacancy rate for non-responses when it began its vacancy study in early November 2023, the codification of that same presumption over one month later usurped Poughkeepsie's ability to continue relying on its original zero-vacancy presumption for the duration of the study, and unbeknownst to the city, forced Poughkeepsie to immediately start relying on the statutory provision codifying that presumption instead.

Ultimately, however, because plaintiffs-appellants' claims of unconstitutionality, like all the challenges brought before, were so entirely lacking in merit, the District Court dismissed the Amended Complaint before it even had an opportunity to address this transparently preposterous argument.

Specifically, on May 28, 2024, the District Court issued a Memorandum Decision and Order denying plaintiffs-appellants' motion for a preliminary injunction *inter alia* because they were unlikely to succeed on the merits of their facial Constitutional challenge (A581-A606).  Shortly thereafter, on June 10, 2024, the District Court issued a Memorandum Decision and Order, as well as a Judgment, dismissing the action, in its entirety, for the same reasons set forth in the prior Decision and Order (A607-A611).  Plaintiffs-appellants now seek review of the District Court's sound determinations.

6

## SUMMARY OF THE ARGUMENT

Facial challenges to the constitutionality of a statute, as plaintiffs-appellants bring here, are the most difficult to mount successfully. *See City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015) (*quoting United States v. Salerno*, 481 U.S. 739, 745 (1987)). To be successful, plaintiffs-appellants must demonstrate that no set of circumstances exist under which the ETPA provisions at issue would be valid. *See Salerno*, *supra*, at 745.

The District Court correctly found that plaintiffs-appellants had not and could not successfully mount a facial challenge to the subject ETPA provisions under either the Fourth or Fourteenth Amendments to the United States Constitution.

With respect to plaintiffs-appellants claims under the Fourth Amendment, the District Court correctly found that neither the authorization provided to municipalities to request certain records during the course of a vacancy under ETPA § 8623(d) nor the enforcement mechanism authorized by ETPA § 8623(e) facially violate the Fourth Amendment's prohibition against *unreasonable* searches and seizures. The facial constitutionality of this legislative scheme is especially apparent in light of plaintiffs-appellants' lack of any significant privacy interest in the records and the statutory protections that limit the potential encroachment on any Fourth Amendment rights that may exist.

7

With respect to plaintiffs-appellants claims under the Fourteenth Amendment, the District Court correctly found that the numerous opportunities to be heard regarding the "zero vacancy" presumption authorized by ETPA § 8623(f), both before and after any potential deprivation of property rights, unquestionably satisfies the Fourteenth Amendment's due process requirements.

Plaintiffs-appellants' facial challenges rely on tortured interpretations of the subject provisions that run counter to the well-known principles of statutory interpretation and constitutional avoidance and fly in the face of basic common sense. As these provisions not only can, but should, under any rational interpretation, be read as fully comporting with the requirements of the United States Constitution, plaintiffs-appellants facial challenges must fail, and the District Court was right to dismiss the Amended Complaint, in its entirety.

## ARGUMENT

### POINT I
### ETPA §§ 8623[D] & [E] ARE FACIALLY VALID AND DO NOT VIOLATE THE FOURTH AMENDMENT

#### A. PLAINTIFFS-APPELLANTS HAVE NO REASONABLE EXPECTATION OF PRIVACY IN THE RECORDS THAT MAY BE REQUESTED UNDER ETPA § 8623[D]

The Fourth Amendment protects the public from "unreasonable searches and seizures" of their "persons houses, papers, and effects." U.S. Const. amend. IV. Yet, these protections can only be invoked where the party seeking such protection has a justifiable, reasonable and/or legitimate expectation of privacy in the records

to be searched. *See United States v. Knotts*, 460 U.S. 276, 280 (1983) (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)).

For several reasons, plaintiffs-appellants cannot plausibly allege that such an expectation of privacy exists with respect to the records that may be requested pursuant to ETPA § 8623(d).

Specifically, ETPA § 8623(d) authorizes a municipality to request, where available, up to three years of rent roll records as part of a study to determine its vacancy rate. N.Y. Unconsol. Laws ch. 249-B, § 3(d). These rent roll records are required to include relevant tenant information, including the name, address and amount charged for each occupied housing accommodation, as well as relevant vacancy information, including the identification of vacant housing accommodations, whether such accommodations were available for at the time of the survey and, if not, the reason for their unavailability. N.Y. Unconsol. Laws ch. 249-B, § 3(d).

With respect to the records containing tenant information, any expectation of privacy in such information would have originally belonged to the tenant, not the landlord, and, as such, only the tenant, not the landlord, would have standing to assert any associated Fourth Amendment rights. *See MA LEG Partners 1 v. City of Dallas*, 442 F. Supp. 3d 958, 965 (N.D. Texas 2020). Further, any expectation of privacy the tenant initially had in the information would have ceased to be

9

legitimate or reasonable the moment the tenant provided that information to their landlord. *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984) ("[W]hen a person communicates information to a third party even on the understanding that the communication is confidential, he cannot object if the third party conveys that information or records thereof to [the] authorities.").

In addition, the records that can be requested under ETPA § 8623(d) represent only a small subset of the records landlords are required to provide as part of the registration process following the declaration of a housing emergency under ETPA. N.Y. Unconsol. Laws ch. 249-B, § 12-a. As this information is required to be disclosed under other regulatory schemes, and has been disclosed for decades, plaintiffs-appellants cannot assert, and do not have, a reasonable or legitimate expectation of privacy in it. *See MA LEG Partners 1*, *supra*, at 965; *see also Harper v. Werfel*, No. 23-1565, 118 F.4th 100, 2024 U.S. App. LEXIS 24238, at *24 (1st Cir. September 24, 2024) (citing *Whalen v. Roe*, 429 U.S. 589, 601 (1977)). This is especially true here in light of plaintiffs-appellants' admission that they do not challenge the validity of these registration requirements. *See Hotop v. City of San Jose*, 982 F.3d 710, 715 (9th Cir. 2020).

Last, but not least, "the modern businessman has little or no expectation of privacy in his business records, especially those documents prepared in compliance with regulatory requirements." *See Glenwood TV, Inc. v. Ratner*, 103 A.D.3d 322

(2d Dept. 1984). Indeed, where the recordkeeping and reporting requirements are regulatory in nature, the records sought to be obtained are customarily kept in the ordinary course of business and do not implicate any illegal activity, and the information in those records has a public component, the Fourth Amendment offers no protection at all. *See Gem Fin. Serv. v. City of New York*, 298 F. Supp. 3d 464, 480-84 (E.D.N.Y. 2018).

This is exactly the case here. The records request authorized by ETPA § 8623(d) is limited to those records necessary to evaluate the vacancy rate and appropriateness of regulation, are already kept by landlords and contain information, like unit availability and rent rates, that has a public component.

As plaintiffs-appellants cannot plausibly allege a justifiable, reasonable and/or legitimate expectation of privacy in the records ETPA § 8623(d) authorizes municipalities to request, the District Court properly dismissed their facial challenge under the Fourth Amendment.

**B.     ETPA § 8623[E] DOES NOT PRECLUDE AN OPPORTUNITY FOR REVIEW PRIOR TO THE IMPOSITION OF ANY NOMINAL PENALTY FOR NON-COMPLIANCE**

Plaintiffs-appellants' contention that ETPA § 8623(e) is facially invalid under the Fourth Amendment because it permits a municipality to unilaterally impose a monetary penalty on a landlord who refuses to provide records lawfully requested under ETPA § 8623(e) is incompatible with long standing principles of statutory interpretation and constitutional avoidance.

It is well settled that statutes should be construed to avoid constitutional concerns as long as such a construction is not plainly contrary to the intent of the legislature. *See Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 496 (2d Cir. 2007); *Empire Healthchoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 144 (2d Cir. 2005). Indeed, courts should go to great lengths to give statutes a limiting construction if doing so would ameliorate any constitutional concerns. *See Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001). In addition, courts should presume that legislative bodies are cognizant of constitutional requirements and intend for their statutes to be compliant with the same. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

Here, the provision being challenged limits the civil penalty a municipality can impose on property owners that refuse to participate in a vacancy study and cooperate with the municipality or intentionally submit false information in response to the vacancy study, setting the maximum for such penalty at five hundred dollars. *See* N.Y. Unconsol. Laws ch. 249-B, § 3(e). The statute does not contain any express direction regarding the manner in which the penalty may be imposed.

Under the principles of statutory interpretation and constitutional avoidance set forth above, the Court must presume that the legislature was cognizant of the Constitution's due process requirements and construe the statute as requiring a

municipality to bring a civil action to impose the penalty allowed under ETPA § 8623(e). Such an interpretation is also most consistent with the overall framework of §8623 and the surrounding language in §8623(c) which recognizes the importance of providing property owners with an opportunity to be heard before taking any action that could potentially have an adverse financial impact on them. *See Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 177 (2d Cir. 2006).

Even if the Court were to consider plaintiffs-appellants' interpretation of the statutory language to be plausible, this would be insufficient to satisfy their burden on a facial constitutional challenge. Rather than show the statute is unconstitutional in every application as required, *see Salerno*, *supra*, at 745, plaintiffs-appellants would have only succeeded in demonstrating the existence of ambiguity, effectively making it impossible to tell what extent the statute deviates from the requirements of the Fourth Amendment. *See Patel*, *supra*, at 416.

For these reasons, courts have recognized that "claims for facial relief under the Fourth Amendment are unlikely to succeed when there is substantial ambiguity as to what conduct a statute authorizes." *Id*. In fact, "where a law is susceptible to a wide variety of interpretations; where it is difficult to tell precisely what conduct a statute authorizes; and where further factual development would enhance a court's ability to deal with the legal issue presented," courts have found that a

facial Fourth Amendment challenge would not even be ripe for review. *Olsen v. Hamilton*, 330 F. Supp. 3d 545, 552 (Maine Dist. Ct. 2018).

C.    **ETPA §§ 8623[D] & [E]** SATISFY THE STANDARD OF REASONABLENESS REQUIRED TO SURVIVE A FACIAL CONSTITUTIONAL CHALLENGE

"[T]he ultimate measure of the constitutionality of a governmental search is reasonableness." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995). In cases like the one at bar, where there was no clear practice either approving or disapproving of the type of search authorized by the challenged statutory provision at the time it was enacted, whether the search meets the reasonableness standard is judged by balancing its intrusion on the Fourth Amendment interests of the challenger against its promotion of legitimate governmental interests. *See id.* at 652-53; *see also Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 536-37 (1967) ("there can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails").

To the extent that plaintiffs-appellants even have a protected Fourth Amendment interest (Point I(A), *supra*), and to the extent their challenge is ripe for review (Point I(B), *supra*), the challenged statutory provisions plainly satisfy the standard of reasonableness required to be constitutionally sound.

Warrantless inspections of commercial property are afforded much wider latitude than searches of private homes. *See Donovan v. Dewey*, 452 U.S. 594, 598 (1980). Thus, "legislative schemes authorizing warrantless administrative searches

of commercial property do not necessarily violate the Fourth Amendment." *Id.* Where special needs make the warrant and probable cause requirement impractical, and where the primary purpose of the search is distinguishable from the general interest of crime control, the warrantless search regime is likely to be reasonable as long as party being searched has an opportunity to be heard by a neutral decisionmaker before facing any penalties for failing to comply. *See Patel*, *supra*, at 420-21.

ETPA §§ 8623(d) and (e) satisfy all the hallmarks of reasonableness described above. First, plaintiffs-appellants privacy interest in the records that may be requested under §8623(d) is exceedingly minor, if it even exists at all. In addition, any incursion into that minimal interest is further reduced by the limitations built into the subject provision. Specifically, the records can only be requested when a municipality is actively conducting a vacancy study, and the municipality is only authorized to request those records that are relevant to the determination of the vacancy rate. *See* N.Y. Unconsol. Laws ch. 249-B, § 3(d). In addition, §8623(e) can and should be interpreted as providing the pre-penalty review that was absent in *Patel*, and stringently limits the penalties a municipality can seek to employ against uncooperative and/or fraudulent property owners. *See* N.Y. Unconsol. Laws ch. 249-B, § 3(e). These factors serve to greatly curtail the extent of any Fourth Amendment intrusion that may be authorized by ETPA.

15

On the other side of the scale, municipalities have a significant and legitimate interest, distinguishable from a general interest in crime control, in obtaining the records necessary to ensure that any vacancy rate calculation is completely accurate. This not only protects tenants by ensuring that an existing housing emergency is not overlooked because landlords provided inaccurate information that could not be verified by with documentary evidence, it also protects landlords by ensuring that the municipality will not prematurely declare a housing emergency that the records could demonstrate does not actually exist.

In addition, there exists special needs that make the warrant and probable-cause requirements impractical. Specifically, the records at issue can only be sought during a time sensitive period where a municipality is trying to determine whether a housing emergency exists. Quick retrieval of the records relevant to making such a determination is essential as any delay would exacerbate and/or prolong any housing emergency found to exist and subject landlords to an extended period of uncertainty regarding the possibility of impending regulation. Moreover, to avoid running afoul of the Fourteenth Amendment's Equal Protection Clause, the municipality would likely be required to request the same records from all properties being surveyed. Requiring a municipality to obtain hundreds of warrants on an expedited schedule would impose an overwhelming burden that would render compliance untenable, if not outright impossible.

16

Finally, contrary to plaintiffs-appellants' contentions, the District Court correctly found that the closely regulated business exception applies to the rental housing industry given its long history of being subject to extensive regulation. Indeed, it is precisely because the rental housing industry has long been closely and heavily regulated by the state that municipalities were repeatedly thwarted in their attempts to enact good cause eviction laws under the preemption doctrine. *See, e.g.*, *Pusatere v. City of Albany*, 214 A.D.3d 91 (3d Dept. 2023). In addition, for the same reasons the challenged ETPA provisions satisfy the standard of reasonableness required for administrative searches, these provisions also satisfy the requirements for searches made pursuant to the closely regulated business exception. *See New York v. Burger*, 482 U.S. 691, 702-03 (1987).

Accordingly, the District Court's dismissal of plaintiffs-appellants' first cause of action should be affirmed in all respects.

## POINT II
## PLAINTIFFS-APPELLANTS HAVE NOT ALLEGED AND CANNOT DEMONSTRATE THAT ETPA § 8623[F] VIOLATES THE FOURTH AMENDMENT

While plaintiffs-appellants' strained interpretation of ETPA § 8623(e) was insufficient to mount a facial challenge under the Fourth Amendment, their interpretation of ETPA § 8623(f) is far worse, ignoring every principle of statutory interpretation, dispensing with common sense and torturing the plain language of the statute to make it unrecognizable.

17

ETPA § 8623(f) provides that "[a] nonrespondent owner shall be deemed to have zero vacancies." N.Y. Unconsol. Laws ch. 249-B, § 3(f). This simple proclamation merely codifies a standard practice that has long been used, with the express approval of the courts, by organizations and municipalities conducting vacancy studies. *See, e.g., Spring Valley Gardens Associates v. Marrero*, 100 A.D.2d 93 (2d Dept. 1984) *aff'd* 68 N.Y.2d 627 (1986); *see also Matter of Hudson Val. Prop. Owners Assn. Inc. v. City of Kingston N.Y.*, 227 A.D.3d 1 (3d Dept. 2024). Rather than being punitive, the codification of this practice actually *benefits* property owners by providing some measure of uniformity in the processes used to conduct vacancy studies in various municipalities across the state.

Aside from being enacted at the same time, ETPA § 8623(f) bears no relation to ETPA § 8623(d) and is certainly not, as plaintiffs-appellants now claim, a tool to punish the failure to produce documents requested under §8623(d). Rather, by its own terms, §8623(f) applies only to "nonrespondent owner[s]." N.Y. Unconsol. Laws ch. 249-B, § 3(f).

Plaintiffs-appellants must have understood this clear language and plain meaning at one point time, as their Amended Complaint does not allege that ETPA § 8623(f) violates the Fourth Amendment. For plaintiffs-appellants to now attempt to persuade this Court that the District Court overlooked their argument that §8623(f) serves as a penalty to coerce landlords into complying with a request for

18

documents made under ETPA § 8623(d), when they themselves failed to include such an allegation in their Amended Complaint, is beyond galling.

Unlike the potential ambiguity presented by the failure of ETPA § 8623(e) to clearly set forth the process a municipality is required to use when attempting to levy the nominal monetary penalty prescribed therein, there is no potential ambiguity regarding ETPA § 8623(f). The plain language makes clear that the zero-vacancy presumption, as codified therein, can only be applied to nonresponding property owners—in other words, those who fail to provide any response to vacancy study whatsoever.[2] It is equally clear, then, that if a property owner provides any response to the vacancy study at all, the zero-vacancy presumption codified by §8623(f) could not be applied merely because the property owner refuses to produce documents requested under ETPA § 8623(d).

It is not even necessary to go to great lengths to interpret ETPA § 8623(f) in a manner that avoids raising constitutional concerns—simply adhering to the plain language would accomplish that. Instead, plaintiffs-appellants turn these common law directives upside down and go to great lengths to torture this plain language in a desperate attempt to manufacture a constitutional concern that would not

---

[2] Interpreting ETPA § 8623(f) in accordance with its plain language does not have any effect on the standard practices used in vacancy studies conducted in good faith and, as such, would not preclude a municipality from utilizing a zero-vacancy presumption for landlords that provide conflicting responses in accordance with those practices.

19

otherwise exist and was never alleged in the Amended Complaint.  This Court should reject plaintiffs-appellants' unethical sleight of hand and affirm the District Court's dismissal of their Fourth Amendment challenge in all respects.

**POINT III**
**ETPA § 8623(ғ) IS FACIALLY VALID AND DOES NOT VIOLATE THE FOURTEENTH AMENDMENT**

The allegation that ETPA § 8623(f) is void under the 14th amendment is so baseless and lacking in merit it is practically sanctionable.  Once again, plaintiffs-appellants, in derivation of long-standing principles, proffer a strained and tenuous interpretation of the statutory language that flies in the face of common sense and plain meaning in order to dream up some imagined constitutional concern.

As noted in Point II, *supra*, ETPA § 8623(f) is a very simple codification of the longstanding practice in vacancy studies that assumes properties who fail to respond to the study have zero vacancies.  The exact language used is as follows: "A nonrespondent owner shall be deemed to have zero vacancies."  N.Y. Unconsol. Laws ch. 249-B, § 3(f).

To create a problem where none exists, plaintiffs-appellants awkwardly construe the statute to contain additional language so that it reads "[a] nonrespondent owner shall be deemed to have zero vacancies, *and this presumption can never be rebutted with evidence demonstrating the existence of*

20

*more than zero vacancies at the nonresponding property*." This is utterly preposterous for a number of reasons.

First, plaintiffs-appellants' construction does not fit within the statutory scheme and surrounding language. *See Field Day, LLC*, *supra*, at 177. For example, if, as plaintiffs-appellants argue, a municipality is prohibited from further investigation the instant the initial response deadline has passed, there would be no need to authorize the document requests permitted under ETPA § 8623(d). Similarly, why would ETPA § 8623(c) require that a municipality hold a public hearing before declaring a housing emergency if ETPA § 8623(f) prohibits the municipality from considering any evidence presented at that hearing?

Second, this construction does not fit within their own lived experience, as plaintiffs-appellants are well aware that defendant-appellee Poughkeepsie, who they claim relied on ETPA § 8623(f), did indeed conduct the precise follow-up investigation they claim to be prohibited by §8623(f) (A381-A383).

Once again, rather than going to great lengths to construct the statute to comport with the constitution as required, *see Allstate Ins. Co.*, *supra*, at 150, plaintiffs-appellants instead go to great lengths to create a constitutional problem that they know does not exist.

The District Court correctly concluded that plaintiffs-appellants could not plausibly allege that ETPA § 8623(f) facially violates the Fourteenth Amendment

because plaintiffs-appellants have not one, not two but *three* opportunities to challenge a zero-vacancy rate calculation.  The first such opportunity occurs before a housing emergency is even declared, by way of the public hearing required under ETPA § 8623(c).  This opportunity alone is sufficient to satisfy the Due Process Clause of the Fourteenth Amendment.  *See Kaur v. New York State Urb. Dev. Corp.*, 15 N.Y. 3d 235, 261 (2010).

The second opportunity occurs after the declaration of a housing emergency by way of an Article 78 proceeding.  This also independently satisfies the Fourteenth Amendment's procedural due process requirement.  *See Arizona Hudson Valley LLC v. Allen*, No. 22-CV-1306, 2023 U.S. Dist. LEXIS 100447, at *13 (N.D.N.Y. June 9, 2023).  Plaintiffs-appellants should be especially familiar with this particular opportunity to challenge the application of a zero-vacancy presumption as at least one of them is a party to this exact proceeding, brought by their lawyer, against defendant-appellee Poughkeepsie.  *See Corlies Manor Realty, LLC, et. al. v. The City of Poughkeepsie*, et. al., Index No. 2024-53504 (Sup. Ct. Dutchess County), filed on July 26, 2024 and available on the New York State Court Electronic Filing System (NYSCEF).

The existence of this Article 78 proceeding exposes plaintiffs-appellants' extreme bad faith.  In this action, plaintiffs-appellants expressly claim that ETPA § 8623(f) prohibits a municipality from investigating the vacancies of

22

nonresponding landlords, thereby rendering the Article 78 proceeding an insufficient opportunity to be heard that fails to satisfy the Fourth Amendment. They also claim that Poughkeepsie relied on §8623(f) in conducting its survey. Despite these claims, they have nevertheless brought an Article 78 proceeding to challenge Poughkeepsie's use of a zero-vacancy presumption.

Clearly, plaintiffs-appellants do not actually believe the arguments they are making to this Court and understand that an Article 78 proceeding does, in fact, provide a sufficiently meaningful opportunity to challenge a zero-vacancy rate determination under ETPA § 8623(f) that satisfies the Fourteenth Amendment.

Finally, as municipalities that have declared a housing emergency are under a continuing obligation to end the emergency once the vacancy rate exceeds five percent (5%), landlords are afforded an unlimited number of opportunities to be heard on the vacancy rate calculation after the emergency has been declared.

The claim that these numerous opportunities to be heard are insufficient to satisfy the Due Process Clause of the Fourteenth Amendment would be laughable were it not made in bad faith. Accordingly, the District Court was right to dismiss the Second Cause of Action, and that decision should be affirmed, in its entirety.

## CONCLUSION

For all the reasons set forth herein, this Court should affirm, in their entirety, the District Court's Decisions, Orders and Judgment denying plaintiffs-appellants' motion for a preliminary injunction and dismissing their Amended Complaint.

Dated:   Poughkeepsie, New York
November 12, 2024

Yours, Etc.

**CITY OF POUGHKEEPSIE
OFFICE OF CORPORATION
COUNSEL**

By: _____
REBECCA A. VALK, ESQ.
*Attorneys for Defendants-Appellees City of Poughkeepsie, New York*
62 Civic Center Plaza
Poughkeepsie, New York   12601
Telephone: 845-451-4065

## CERTIFICATE OF COMPLIANCE

This brief complies with the limitations of Federal Rule of Appellate Procedure 29(a)(5) and Local Rule 29.1(c). It contains 5,176 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6). It has been prepared in a proportionally spaced typeface, 14-point Times New Roman, using Microsoft Word.

Dated: Poughkeepsie, New York
        November 12, 2024

                        Yours, Etc.

                        **CITY OF POUGHKEEPSIE**
                        **OFFICE OF CORPORATION**
                        **COUNSEL**

            By: _____
                        REBECCA A. VALK, ESQ.
                        *Attorneys for Defendants-Appellees City of*
                        *Poughkeepsie, New York*

25